John J. Kane (SBN 24066794)
S. Kyle Woodard (SBN 24102661)
JaKayla J. DaBera (SBN 24129114)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
E-mail: jkane@krcl.com
E-mail: kwoodard@krcl.com
E-mail: jdabera@krcl.com

**COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **UNIVERSAL REHEARSAL** | § | **Case No. 22-31966** |
| **PARTNERS, LTD.,** | § | |
| | § | |
| Debtor. | § | |

## COVER SHEET FOR FIRST AND FINAL FEE APPLICATION OF KANE RUSSELL COLEMAN LOGAN, PC FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS THE DEBTOR'S COUNSEL FOR THE PERIOD FROM OCTOBER 21, 2022 THROUGH APRIL 10, 2023

| | |
|---|---|
| Name of Applicant: | Kane Russell Coleman Logan PC |
| Capacity: | Counsel to Debtor |
| Name of Client(s): | Universal Rehearsal Partners, Ltd. |
| Time Period covered by this Application: | October 21, 2022 through April 10, 2023 |
| Total Compensation sought this Period: | $197,108.50 |
| Total Expenses sought this Period: | $8,990.64 |
| Voluntary Fee Reduction: | $5,000.00 |
| Petition Date: | October 21, 2022 |
| Retention Effective Date: | October 21, 2022 |
| Date of Order Approving Employment: | December 7, 2022 [Docket No. 54] |

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | N/A |
| Total Expenses Approved by Interim Order to Date: | N/A |
| Total Allowed Compensation Paid to Date: | $0 |
| Total Allowed Expenses Paid to Date: | $0 |
| Blended Hourly Rate in this Application for all Attorneys: | $419.25 |
| Blended Hourly Rate in this Application for all Non-Attorneys: | $238.89 |
| Blended Hourly Rate in this Application for all Timekeepers: | $409.21 |
| Number of Professionals Included in this Application | 7 |

This is a:  ___ monthly  _____ interim  __x__ final application

John J. Kane (SBN 24066794)
S. Kyle Woodard (SBN 24102661)
JaKayla J. DaBera (SBN 24129114)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
E-mail: jkane@krcl.com
E-mail: kwoodard@krcl.com
E-mail: jdabera@krcl.com

**COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **UNIVERSAL REHEARSAL PARTNERS, LTD.** | § § § § | **Case No. 22-31966** |
| **Debtor.** | § § | |

# FIRST AND FINAL FEE APPLICATION OF KANE RUSSELL COLEMAN LOGAN PC FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS DEBTOR'S COUNSEL FOR THE PERIOD FROM OCTOBER 21, 2022 THROUGH APRIL 10, 2022

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Kane Russell Coleman Logan, PC ("**KRCL**"), as counsel for Universal Rehearsal Partners, Ltd., debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 bankruptcy case (the "**Bankruptcy Case**" or "**Case**"), files this *First and Final Fee Application* (the "**Application**") seeking allowance and payment of compensation for services rendered and reimbursement of actual and necessary expenses incurred from **October 21, 2022**, through **April 10, 2022** (*i.e.*, the Petition Date through the Plan Effective Date). In support of this Application, KRCL respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Application seeks relief pursuant to sections 330, 331, and 503(b)(2) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules of this Court (the "**Local Rules**").

## BACKGROUND

A. **PROCEDURAL HISTORY**

3. On October 21, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code. The Debtor is operating as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committees have been appointed in this Case.

4. The Debtor filed multiple "first-day" motions on the Petition Date, including its *Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Scheduling a Final Hearing; and (iv) Granting Related Relief* [Dkt. #4] (the

"**Cash Collateral Motion**"); its *Emergency Motion for Entry of an Order (I) Authorizing Debtor to (A) Operate Its Cash Management System and (B) Maintain Existing Bank Accounts; and (II) Granting Related Relief* [Dkt. #5] (the "**Cash Management Motion**"); and its *Emergency Motion for Turnover of Recorded Information to Debtor Pursuant to Sections 524(a) and (e) of the Bankruptcy Code* [Dkt. #6] (the "**Turnover Motion**"). The Debtor also filed the *Declaration of John Kirtland* [Dkt. #8] and the *Declaration of Marcus Morriss* [Dkt. #9] on the Petition Date in support of the first-day motions.

5. On November 4, 2022, the Debtor filed its *Application to Employ Kane Russell Coleman Logan PC as Bankruptcy Counsel* [Dkt. #34]. On December 8, 2022, the Court entered an Order granting the Application and authorizing KRCL's employment as the Debtor's counsel effective as of the Petition Date [Dkt. #54].

6. On December 23, 2022, the Court entered a final Order granting the Cash Collateral Motion [Dkt. #61] (the "**Cash Collateral Order**") and authorizing the Debtor to use the cash collateral of PlainsCapital Bank, the Debtor's prepetition secured lender.

7. On January 4, 2023, the Debtor filed its *Motion for Entry of an Order (I) Approving Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets; (II) Authorizing and Approving (A) the Sale of Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and (B) Debtor's Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief* [Dkt. #63] (the "**Sale Motion**" or "**Bid Procedures Motion**," as applicable) in connection with the Debtor's proposed sale of substantially all of its assets under section 363 of the Bankruptcy (the "**Sale**"), including its real property located at 9142 and 9150 Markville Drive, Dallas, Texas 75243 (the "**Real Property**" or "**Property**"). On February 2, 2023, the Court entered an Order granting the Bid Procedures Motion [Dkt. #87] and approving the Bid Procedures attached thereto as Exhibit A (the "**Bid Procedures**") in connection with the Sale.

8. On February 4, 2023, the Debtor filed its *Chapter 11 Plan of Liquidation* [Dkt. #90] (the "**Plan**")[1] and *Disclosure Statement Pursuant to 11 U.S.C. § 1125* [Dkt. #91] (the "**Disclosure Statement**").

9. On February 28, 2023, the Debtor conducted an Auction for the Property pursuant to and in accordance with the Bid Procedures (the "**Auction**"). TC Realty, LLC (the "**Purchaser**") submitted the highest and best bid of $1,555,000.

10. On March 1, 2023, the Court held a hearing to consider approval of the Sale to the Purchaser. On March 3, 2023, the Court entered an *Order Authorizing and Approving (A) the Sale of Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and (B) Debtor's Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief* [Dkt. #100] (the "**Sale Order**") approving the Sale to the Purchaser on the terms of the Commercial Contract of Sale attached thereto [Dkt. #100-1] (the "**APA**"). The Sale closed on March 9, 2023.

11. On April 6, 2023, the Court entered an Order confirming the Plan and approving the Disclosure Statement on a final basis [Dkt. #118] (the "**Confirmation Order**"). The Confirmation Order also, *inter alia*, approved the form of Liquidating Trust Agreement attached thereto as Exhibit B [Dkt. #118-2] (the "**Liquidating Trust Agreement**").

12. The Plan became effective on April 10, 2023 (the "**Effective Date**"). *See* Dkt. #121. This Application does seek compensation or reimbursement for any fees or expenses incurred by KRCL after the Effective Date.

13. The Plan and Confirmation Order established the Universal Rehearsal Partners Liquidating Trust (the "**Liquidating Trust**") for the purpose of administering the Debtor's remaining assets, primarily consisting of cash proceeds from the Sale, and winding down the Debtor. As of the Effective Date, all of the Debtor's assets vested in the Liquidating Trust, and Erik White, as the duly-

---

[1] Capitalized terms that are not defined herein have the meanings provided in the Plan unless otherwise noted.

appointed trustee of the Liquidating Trust (the **"Liquidating Trustee"** or **"Trustee"**), holds all management authority over the Wind-Down Debtor.

**B.    CASE STATUS**

14.    The Debtor's business operations were limited to renting the Real Property to musicians for rehearsal and storage spaces. The Property was the Debtor's only real asset. As of the Sale closing on March 9, 2023, all of the Debtor's tangible assets have been liquidated and reduced to cash proceeds. The Debtor has no remaining obligations under the APA, save and except for returning security deposits of less than $10,000 to tenants. The Debtor filed a motion for authority to refund the security deposits on April 26, 2023 [Dkt. #126].

15.    PlainsCapital's secured claim of approximately $706,000 was paid in full at Closing; the Debtor paid all 2022 ad valorem taxes prior to the Closing; and the Purchaser is responsible for all 2023 ad valorem taxes. Thus, administrative expense claims and general unsecured claims are the only remaining claims to be paid under the Plan. The Debtor is holding more than $800,000 in proceeds from the Sale, which is sufficient to pay all allowed claims in full under the Plan with significant funds left for distribution to the Debtor's partners.

16.    Distributions to the partners, however, remains subject to determination based upon the outcome of the Partnership Litigation, as further described in the Plan and Disclosure Statement. The Partnership Litigation consists of two prepetition lawsuits which have been removed and are pending in this Court as Adversary Proceeding Nos. 23-03011 and 23-03012.[2] The Court entered an Order consolidating the two Adversary Proceedings on February 28, 2023.

17.    The parties are scheduled to mediate both Adversary Proceedings on May 10, 2023, before the Hon. Harlin D. Hale (Ret.). Resolution of the Partnership Litigation would resolve

---

[2] Cause No. DC-22-00172 filed in the 191st District Court of Dallas County, Texas, styled *Universal Rehearsal Partners LTD v. Barnhill*, is pending as Adv. Proc. No. 23-03011, and Cause No. DC- 21-16507 filed in the 193rd Judicial District Court of Dallas County, Texas, styled *John Kirtland v. Vince Edward Barnhill*, is pending as Adv. Proc. No. 23-03012.

substantially all outstanding matters in this case, aside from the Trustee's reconciliation of claims and other routine matters associated with the Debtor's Wind-Down.

C.     **SERVICES RENDERED BY KRCL**

18.     KRCL and the Debtor faced numerous obstacles throughout this Case and navigated a variety of complex legal issues before arriving at the confirmation of a 100% Plan. The services performed by KRCL are summarized as follows:

**(i)     Partnership Disputes and Operational Hurdles**

19.     As the Court may recall, the Debtor's filing of this Case was predicated primarily on Barnhill's interference with the Debtor's business operations. Until November, 2021, Barnhill served as the Debtor's general partner and was, in essence, charged with operating the Debtor's business. Over time Barnhill began violating the Debtor's LP Agreement by, among other things, failing to escrow and pay ad valorem taxes, failing to distribute the Debtor's income equally with Kirtland, failing to maintain accurate books and records, and failing to file state and federal tax returns. Ultimately, Kirtland learned from the Debtor's former CPA that Barnhill may have been misappropriating funds and failing to deposit revenue into the Debtor's bank account, instead retaining the funds himself, which ultimately led to non-monetary defaults under the Debtor's loan documents with PlainsCapital.

20.     In November, 2021, Barnhill was removed and replaced by Q PM, LLC ("**QPM**") as the Debtor's general partner. Marcus Morriss ("**Morriss**") managed QPM in such capacity. Even after his removal, however, Barnhill continued to act as the Debtor's general partner and sought to prevent Morriss and Kirtland from exercising any control over the Debtor's operations. Barnhill refused to give up possession and control of books and records, recorded information, business documents, and papers related to the Debtor's property and financial affairs, even in spite of state court orders. Consequently, the Debtor was forced to file the Turnover Motion in an effort to obtain information needed to maintain operations and administer its bankruptcy estate, including, *inter alia*,

information necessary to prepare its bankruptcy schedules and statement of financial affairs, and, more importantly, information necessary to actually market and enable a Sale of the Property.

21. Even though the Court granted the Turnover Motion at the first-day hearings, *see* Dkt. #27, Barnhill still refused to produce many items sought by the Debtors, in direct violation of the Court's Order. In short, KRCL devoted significant time and attention early in this Case to simply obtaining documents and information needed to administer the Case—tasks that debtors do not typically face.

**(ii)     Additional First-Day Matters**

22. In addition to the Turnover Motion, the Debtor had to address cash collateral and cash management issues at the outset of this Case. KRCL prepared and filed the Debtor's Cash Management Motion and, after two interim hearings, successfully negotiated a consensual Cash Collateral Order with PlainsCapital.

23. The Debtor also faced unusual issues in the cash management context related to Barnhill's collection of rents and access to the Debtor's bank account (despite a prepetition state court order prohibiting Barnhill from taking such actions). Additionally, prior to his removal, Barnhill began using a Venmo account to collect rent from tenants, and Barnhill refused to provide Morriss or Kirtland with access to the account. Stabilizing the Debtor's operations required obtaining access to this Venmo account and prohibiting Barnhill from exercising any control over the Debtor's finances. Through KRCL's efforts, the Debtor was finally able to gain control over its cash management system. KRCL also spent time negotiating with the U.S. Trustee and PlainsCapital regarding the Debtor's post-petition account.

**(iii)    Sale and Bid Procedures**

24. The Debtor and KRCL worked diligently with the Debtor's real estate broker, Colliers International ("**Colliers**"), to consummate a successful Sale of the Debtor's Property. The Sale

process required significant time and attention on tasks such as, among other things, drafting and filing the Sale Motion, Bid Procedures, and proposed orders, responding to inquiries from prospective purchasers, negotiating the form of APA, negotiating and finalizing the stalking horse bid, preparing for and conducting the Auction, several expedited hearings necessary to finalize bidding and auction issues, examining bids, negotiating and resolving objections to the Bid Procedures, hosting a successful and competitive Auction, preparing witnesses and exhibits for the Sale Hearing, and ultimately closing the Sale.

25. Through these efforts, despite numerous obstacles faced at the outset of the Case, the Debtor was able to run an incredibly successful Sale process and consummate a Sale of the Property in less than five months from the Petition Date. With significant credit due to Colliers, the successful bid of $1.555 million exceed the stalking horse bid by more than $500,000 (nearly 50%).

26. KRCL also spent considerable time managing the post-closing transition of ownership of the Property and management of tenants with the new owners. KRCL fielded dozens of calls with concerned tenants and helped establish processes by which to return tenant deposits and facilitate early tenancy terminations.

**(iv)** **Plan and Disclosure Statement**

27. KRCL spent significant time researching, drafting, and negotiating the Plan, Disclosure Statement, and related documents such as the Liquidating Trust Agreement and Confirmation Order. KRCL also incurred fees related to conditional approval of the Disclosure Statement, solicitation of the Plan, engaging and working with the Liquidating Trustee, negotiating and resolving Barnhill's objection to the Plan, as well as comments from the U.S. Trustee, and preparing for the Confirmation Hearing.

D.   **KRCL'S FEES AND EXPENSES**

28.   KRCL seeks allowance and payment of its fees and expenses incurred from October 21, 2022 through April 10, 2023 (the "**Compensation Period**")—*i.e.*, the Petition Date through the Plan's Effective Date.

29.   During the Compensation Period, KRCL expended a total of 493.90 hours of attorney and paralegal time at a blended hourly rate of $409.21 (before voluntary reductions). KRCL incurred professional fees totaling $202,108.50 and actual and necessary expenses totaling $8,990.64, for total fees and expenses of $211,099.14. However, KRCL has voluntarily agreed to reduce its total fees by $5,000.00. That is in addition to more than 36 hours of attorney time billed at no charge to ensure that the Debtor was billed for necessary work performed in an efficient manner.

30.   After applying these voluntary reduction, KRCL seeks total compensation for professional fees in the amount of **$197,108.50** and reimbursement of expenses in the amount of **$8,990.64**, for a total award of **$206,099.14**.

31.   KRCL's monthly invoices for the Compensation Period are attached hereto as **Exhibit B** (the "**Invoices**"). The Invoices are generated by KRCL in the ordinary course of its business and are compiled from daily time records submitted on a contemporaneous basis by the attorneys and paralegals employed by KRCL. Pursuant to KRCL's ordinary billing practices, KRCL's time records are kept in six minute increments. The Invoices are redacted to protect certain privileged or confidential information, particularly with respect to the Partnership Litigation.

32.   The Invoices contain a detailed listing and description of all services performed as counsel to the Committee by KRCL, the time spent and dates on which those services were performed, the hourly rates charged for the services, and the attorneys and paralegals that performed the services. Such descriptions are in compliance with the Guidelines for Compensation and Expense

Reimbursement for Professionals promulgated by the U.S. Trustee and set forth in this Court's Local Rule Appendix 9007, Exhibit H (the **"Guidelines"**).

33. Pursuant to the Guidelines, KRCL has also prepared a summary of the total fees and expenses incurred during each month of the Compensation Period (the **"Billing Summary"**), including a table indicating the costs of services in regard to specific subject areas or matters of the case. The Billing Summary is attached hereto as **Exhibit A**. As shown on the Billing Summary, with limited exceptions, only three KRCL attorneys have worked on this matter consistently: John Kane, Kyle Woodard, and JaKayla DaBera. Those attorneys attended hearings, meetings and conferences during the Compensation Period.

34. KRCL's expenses incurred during the Compensation Period are set forth in detail on the Invoices and summarized in the Billing Summary. KRCL has supporting documentation for the expenses and will make such documentation available to a party in interest upon request.

35. KRCL has not received compensation or reimbursement for any fees or expenses incurred during the Compensation Period.

36. Prior to the Petition Date, the Debtor funded a retainer to KRCL in the amount of $50,000, of which KRCL applied $36,350 to satisfy its prepetition fees and expenses in full. KRCL is currently holding the retainer balance of $13,650 in trust pending final approval of this Application and authority to draw down on the retainer.

## REQUEST FOR ALLOWANCE AND PAYMENT

37. By this Application, KRCL requests that the Court enter an order (i) allowing, on a final basis, compensation for professional fees in the total amount of **$197,108.50** and reimbursement of expenses in the total amount of **$8,990.64** incurred by KRCL during the Compensation Period; (ii) authorizing KRCL to draw down on its prepetition retainer in partial satisfaction of its allowed fees

and expenses; and (iii) authorizing and directing payment of all unpaid portions of KRCL's allowed fees and expenses.

## BASIS FOR RELIEF

**A.  EVALUATION STANDARDS**

38. Section 330(a)(1) of the Bankruptcy Code provides for the payment of "reasonable compensation for actual, necessary services" rendered by a debtor's attorneys and for the attorneys' "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  To grant a request for compensation pursuant to section 330, a court must find that the request is reasonable.  *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).  The United States Court of Appeals for the Fifth Circuit has held that the "lodestar" method is preferred in this Circuit for calculating attorneys' fees in bankruptcy cases.  *See Fender v. Transamerican Natural Gas Corp.*, 12 F.3d 480, 487 (5th Cir. 1994); *see also Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711 (1986) (holding that the United States Supreme Court prefers the "lodestar" method in the calculation of attorneys' fees).

39. The "lodestar" is determined by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work.  *See Fender*, 12 F.3d at 487.  Following this calculation, "[t]he court then adjusts the lodestar upward or downward depending upon the respective weights of the twelve [*Johnson* factors]." *Id.*

40. The Fifth Circuit employs the *Johnson* factors to aid courts in considering the reasonableness of attorneys' fees, and to assist in the court's findings and reasons upon which an award of attorneys' fees are based.  The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and complexity of the issues involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment; (5) the customary fees; (6) whether the fee is fixed or contingent; (7) any time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature

and length of professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). In addition to the *Johnson* factors, the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), stated that attorneys "should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

B. **APPLICATION OF THE *JOHNSON* FACTORS**

41. This case presented numerous novel and complex issues which required the special skills and experience of KRCL's members. Because of its members' skills and experience, KRCL believes it has minimized fees and other expenses incurred while serving as counsel to the Debtors. KRCL's fees and expenses are also justified under the criteria set forth in *Johnson* and in *In re First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1977). A brief statement with regard to each of the twelve elements set out in the Johnson case follows:

a. <u>Time and Labor Involved</u>. KRCL has expended a total of 493.90 in attorney and paralegal hours and has incurred $211,099.14 in legal fees while serving as counsel to the Debtor during the Compensation Period. The time and hourly billing rate of each attorney and paralegal performing legal services on behalf of the Debtor are reflected in the Billing Summary attached hereto as **Exhibit A**. A detailed description of the services rendered is provided in the Invoices attached hereto as **Exhibit B**.

b. <u>Novelty and Complexity of the Issues Involved</u>. The legal questions encountered in representing the Debtor in this Case were of a complex and specialized nature, requiring a high degree of analytical skill and understanding in obtaining the results that have been obtained to date.

c. <u>Skill Required to Perform the Legal Service Properly</u>. John Kane, Kyle Woodard, JaKayla DaBera dedicate the vast majority of their respective practices to bankruptcy law.

Because of their experience and skill in this specialized area of law, KRCL believes more time could easily have been employed by less experienced counsel. The array of legal considerations presented in this proceeding and the prompt and skillful action taken to resolve those problems by KRCL required a meaningful degree of expertise and experience. KRCL's personnel were accordingly utilized as evidenced by the Invoices in **Exhibit B**.

      d.     <u>Preclusion of Other Employment</u>. While certain periods of this Case were intense, KRCL has not declined other employment as a result of this Case, but has insured it has sufficient personnel to serve as counsel to the Debtor in this case. During the time spent working on behalf of the Debtor, KRCL attorneys' forewent the opportunity to work on other matters.

      e.     <u>Customary Fees</u>. The fees applied for herein are equivalent to customary fees in other proceedings for similar services rendered and results to date.

      f.     <u>Whether the Fee is Fixed or Contingent</u>. Not applicable in this case.

      g.     <u>Time Limitations</u>. A summary of hours expended and the detailed description of the work performed during each of those hours is described in the Invoices attached as **Exhibit B**. As counsel to the Debtor, prompt and intensive action was required in many of the activities of the case.

      h.     <u>Amount Involved and Results Obtained</u>. KRCL has actively participated in the matters for which it was retained as counsel for the Debtor. Overall, KRCL believes it has performed well in this case, that the Debtor's estate has benefitted from KRCL's efforts, and that its fees are appropriate.

      i.     <u>Experience, Reputation, and Ability of the Attorneys and Paralegals</u>. The overwhelming majority of time billed by KRCL attorneys on this engagement was billed by John Kane, Kyle Woodard, and JaKayla DaBera. Similarly, majority of the time billed by KRCL's paralegals on this engagement was billed by Olivia Salvatierra.

(i) Mr. Kane was licensed to practice by the Texas State Bar in 2009 and has been practicing in the area of KRCL's Insolvency, Bankruptcy, & Creditor Rights department since that time. Mr. Kane, a director at the firm, has been recognized as a "Rising Star" by Texas Super Lawyers® from 2014 through 2020. Currently, Mr. Kane is the Chairman of KRCL's Insolvency, Bankruptcy, & Creditor Rights department. During the Compensation Period, Mr. Kane charged a rate of $550 per hour for time billed in 2022 and $580 per hour for time billed in 2023. This rate reflects Mr. Kane's standard rate for 2022 and 2023, respectively. KRCL believes Mr. Kane's rate is reasonable and is justified in light of his experience and is well within local market rates.

(ii) Mr. Woodard was licensed to practice by the Texas State Bar in 2016 and has been practicing in the area of bankruptcy and creditors' rights since that time. During the Compensation Period, Mr. Woodard charged a rate of $400 per hour for time billed in 2022 and $440 per hour for time billed in 2023. This rate reflects Mr. Woodard's standard rate for 2022 and 2023, respectively. KRCL believes Mr. Woodard's rate is reasonable and justified in light of his experience, and well within local market rates.

(iii) Ms. DaBera was licensed to practice by the Texas State Bar in 2022 and has been practicing in the area of bankruptcy and creditors' rights since that time. During the Compensation Period, Ms. DaBera charged a rate of $350 per hour for time billed in 2022 and $385 per hour for time billed in 2023. This rate reflects Ms. DaBera's standard rate for 2022 and 2023, respectively. KRCL believes Ms. DaBera's rate is reasonable and justified in light of her experience, and well within local market rates.

(iv) Similarly, other professionals of KRCL who rendered services for the Debtor during the Compensation Period are well-qualified and skilled to perform the services required.

j. <u>Undesirability of the Case</u>. KRCL does not feel the subject case or acting as counsel to the Debtor in this proceeding was "undesirable."

k. <u>Nature and Length of the Professional Relationship with the Client</u>. KRCL's relationship with the Debtor is a single event.

l. <u>Awards in similar cases</u>. KRCL believes that the fees requested herein are certainly reasonable and are less than, or at least in line with, fees for cases of similar difficulty and complexity.

**C.  KRCL'S REPRESENTATIONS**

42.  Taking all of the *Johnson* factors into consideration, KRCL respectfully submits that the fees and expenses requested in this Application are entirely appropriate.  Accordingly, KRCL respectfully requests that compensation of professional fees and reimbursement of expenses be granted in the amounts requested herein.

43.  KRCL further represents that the fees applied for are in conformity with fees allowed in similar proceedings for similar services rendered and results obtained.  KRCL's expenses incurred on behalf of the Debtor are reasonable and are of the kind and price normally charged to non-bankruptcy clients of KRCL.  KRCL respectfully requests that the Court take judicial notice of the awards which have been made in similar proceedings in this Court and in other bankruptcy courts in the State of Texas.

44.  KRCL has made no agreement for the sharing of compensation of expenses herein, although such fees are shared by members of the firm according to the firm's agreement.

45.  KRCL was at all times a "disinterested person" and has not represented or held any interest adverse to the Debtor's estate on the matters for which it was employed, in compliance with Bankruptcy Code § 327(a).

## CONCLUSION

WHEREFORE, KRCL respectfully requests that the Court enter an order (a) allowing and awarding, on a final basis, compensation for professional fees in the total amount of **$197,108.50** and reimbursement of expenses in the total amount of **$8,990.64** incurred by KRCL during the Compensation Period; (b) authorizing KRCL to draw down on its prepetition retainer in partial satisfaction of its allowed fees and expenses; (c) authorizing and directing payment of all unpaid portions of KRCL's allowed fees and expenses; and (d) granting KRCL such other and further relief as this Court deems just and proper.

DATED: May 10, 2023

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: _/s/ John J. Kane_
    **John J. Kane**
    State Bar No. 24066794
    **Kyle Woodard**
    State Bar No. 24102661
    **JaKayla J. DaBera**
    State Bar No. 2419114

Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
Email: jkane@krcl.com
Email: kwoodard@krcl.com
Email: jdabera@krcl.com

**COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATION OF COUNSEL

I hereby certify that: (i) I have read this Application; (ii) to the best of my knowledge, information, and belief, formed after reasonable inquiry, the professional fee compensation and expense reimbursements sought in this Application conform with the Guidelines; and (iii) the requested professional fees and expense reimbursements are billed at rates and in accordance with practices no less favorable than those customarily employed by KRCL and generally accepted by KRCL's clients.

By: _/s/ John J. Kane_
    John J. Kane

## CERTIFICATE OF SERVICE

This is to certify that on May 10, 2023, a true and correct of the foregoing Application was filed with the Court and served via the Court's CM/ECF system upon all parties receiving such service in this bankruptcy case.

By: _/s/ John J. Kane_
    John J. Kane